16727

MANNING v. DILLON COUNTY *ET AL.*
(75 S. E. (2d) 250)

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, and *Samuel Want,* of Darlington, *for Appellant,*

*Messrs. W. B. Hawkins* and *Herbert Britt,* of Dillon, and *McDonald & McGowan,* of Florence, *for Respondents,*

March 17, 1953.

BAKER, Chief Justice.

Litigation concerning the marriage license statute hereinafter referred to has heretofore been before this Court, in the following cases: *Dillon County v. Maryland Casualty Co.,* 217 S. C. 66, 59 S. E. (2d) 640; *Dillon County v. Maryland Casualty Co.,* 220 S. C. 204, 67 S. E. (2d) 306; *Baker v. Allen,* 220 S. C. 141, 66 S. E. (2d) 618; and

*Whittington v. Allen,* S. C., 74 S. E. (2d) 579. However, the issue before the Court in the present case is in nowise controlled by any of the mentioned cases; in fact, these cases are not even apposite to the issue here involved.

This action was instituted on or about November 21st, 1951, by Houston Manning, plaintiff-appellant, a reputable citizen of Dillon County, owning property and being a taxpayer therein, against the County of Dillon and J. B. Cole as Treasurer thereof, defendants-respondents. He alleges in his complaint that he brings this action for the account of himself and any other residents and taxpayers of the County of Dillon who may come into the cause as parties plaintiff, and invokes the provisions of the "Uniform Declaratory Judgments Act", the same being No. 815 of the Acts of the General Assembly of South Carolina, approved April 7, 1948, 45 Stat. at Large, page 2014, Sections 10-2001 to 10-2014, Code of 1952.

Hereinafter, and for convenience, the parties to this action will occasionally be referred to as plaintiff and defendants, respectively.

In writing this opinion we will draw heavily on the order of the Circuit Judge in sustaining a demurrer to the complaint of the plaintiff on the only issue which we deem it necessary to decide.

Plaintiff's complaint alleges that the defendant County of Dillon is a body politic and corporate, and that W. E. Allen was the duly elected and qualified Judge of Probate of this County during the four-year term beginning January 1, 1947, but that since the expiration of his term he has not had any part in the operation of this office; and that at all pertinent times the defendant J. B. Cole was and is the duly elected, qualified and acting Treasurer of the County of Dillon.

It is further alleged that under the general law of South Carolina the fee payable for the issuance of a marriage license was and is the sum of $1.00; but that the General

Assembly in and by an Act numbered 603, approved February 5, 1948, Acts 1948, page 1612, contains the following provision:

"It shall be the official duty of the Judge of Probate of Dillon County when requested to perform marriage ceremonies during official office hours. He shall charge and collect Four ($4.00) Dollars for each and every marriage license issued by him, regardless of whether such are issued during office hours or not. He shall make no charge for issuing certified copies of marriage certificates. He shall make no charge for the performance of marriage certificates. He shall make no charge for the performance of marriage ceremonies during office hours. Such services are official duties of the office and for which a salary compensation has been provided. Said Judge of Probate, and anyone acting in his behalf, shall collect said fees and they shall, together with all other fees and commissions received by said Probate Judge, be turned over monthly to the treasurer of said County."

It is further alleged that in another suit now pending in the Court of Common Pleas, presumably instituted by the County of Dillon, an Order of Court dated February 26, 1949, was granted to the effect that out of each marriage license fee of $4.00 required to be collected by W. E. Allen, then Judge of Probate of Dillon County, the Treasurer was required to hold separate and apart from the general County funds $3.00 thereof, "subject to the further order of this Court," the same being the amount of the marriage license fee in Dillon County pursuant to the 1948 Act, the pertinent portion of which is quoted in full as aforesaid. It is also alleged that W. E. Allen (quoting) "has contended and is contending" that this Act is unconstitutional, and that he was entitled to receive the excess over the sum of $1.00 paid by the marriage licensees.

It is further alleged in the complaint that counsel for the County of Dillon had given notice of a motion for an order in the cause above referred to authorizing the Treasurer to

pay over and to place in the general County funds the moneys segregated as aforesaid; and it is stated that the amount thereof is a sum in excess of $30,000.00.

Paragraph XI of plaintiff's complaint alleges:

"That as a taxpayer of the County of Dillon the plaintiff has an interest in seeing that the said funds are expended only under proper authority and for only legally authorized purposes, and that in such connection he is entitled to have the Court adjudicate the respective rights and claims of the County of Dillon and of W. E. Allen, and of other persons in the funds in question, since, if the Act in question is declared to be unconstitutional, the County of Dillon will have no rights in the said funds; that accordingly this action for a declaratory judgment is brought by the plaintiff for the purpose of obtaining an adjudication as to the rights of the various parties involved in the present situation, and the status of the County of Dillon, of W. E. Allen, and of other persons in interest in the funds in question; and that the plaintiff alleges that in view of the foregoing, the determination of this Court of the constitutionality of the local Act in question will terminate all uncertainty and controversy respecting the rights of the County of Dillon, and will otherwise promote the ends of justice."

Finally, the complaint in effect sets forth that under date of February 26, 1949, the resident Judge of the Fourth Judicial Circuit granted an order to the effect that the $4.00 for each marriage license collected shall be paid over to the County Treasurer and $3.00 thereof held by him in a segregated fund, subject to the further order of the Court.

The prayer of the complaint is that the Court adjudicate the question of the constitutionality of the 1948 Act, and that the rights of the parties referred to in the complaint in the funds in question be adjudicated, and that pending the hearing of this cause the Treasurer be restrained and enjoined from transferring any of the funds in question to the general funds of the County.

To this complaint the defendants filed a demurrer stating several issues thereabout, the material one of which is as succinctly stated by the Circuit Judge:

"The complaint shows on its face that the plaintiff cannot maintain this action as a taxpayer, because he has no right to attack the constitutionality of the 1948 Act, since he is not injuriously affected thereby; and has no such interest in any of the matters and things alleged in the complaint as would authorize him to maintain this action, which is adverse to the County and its taxpayers."

Another matter before the Court is a motion to dissolve the above mentioned restraining order preventing the County Treasurer from paying into the County treasury the segregated fund consisting of the accumulations under the order of Judge Lewis of February 26, 1949.

The disposition of the litigation as so far made in the decisions hereinabove referred to, presupposes the collection of fees by the Judge of Probate for the issuance by him of Dillon County marriage licenses. But this is contrary to the undisputed facts. What the record in the said cases shows is that the Judge of Probate did not collect for the County, or as an officer of the County, prior to February 26, 1949, the marriage fee of four dollars. What he did was to procure license forms from one or more Clerks of Court in other counties, signed in blank by the Clerks of Court of such other counties. These he filled in with the names of the parties and other necessary information. He then sold such licenses to the persons applying to him for the same. But in so doing he was not acting in the capacity of Judge of Probate of Dillon County, though under color of his office, and without any legal warrant he was selling marriage licenses which were not issued in Dillon County. He therefore did not actually receive and fail to account for *county funds*. If the charges made against him in this litigation are sustained, he might have incurred liabilities to the County for malfeasance in office, as to which we express

no opinion, but that would have no bearing upon the issue now under discussion.

The foregoing must be kept in mind in the disposition of the issue presented in the present phase of the litigation.

As to whether the appellant is eligible to maintain the present action, this Court has not had occasion at any of the earlier stages of the litigation to deal with this issue. We have held that neither the Judge of Probate nor his surety may question the constitutionality of the special Act relating to marriage license fees in Dillon County and that persons who paid four dollars for a Dillon County marriage license may not recover three dollars of the four dollars paid by them unless the payments were involuntarily made. Thus the issue as to the eligibility of the present appellant is a matter now presented for the first time.

Has the appellant, as a taxpayer, such an interest in the litigation as entitles him to contest the validity of the marriage license Act in question: If he has, and if in this action we were to hold the Act to be unconstitutional, the result would not settle the ownership of the segregated fund. In other words, there would be left open, in such event, the material question as to the ownership of the segregated funds arising out of the transactions of the Judge of Probate above described. Therefore, on elementary principles relating to the judicial determination of the constitutionality of the Act, and the applicability of the "Uniform Declaratory Judgments Act", the action is not maintainable by the appellant in his capacity as a taxpayer. It is not a question whether the appellant's interest in the situation arises from any prejudice suffered by him by reason of the unconstitutionality of the Act, if it is unconstitutional, but whether the appellant should be permitted to maintain the action in the face of the fact that the determination of the unconstitutionality of the Act would not dispose of the issue above stated.

It follows from the foregoing that the lower Court order segregating in the hands of the Treasurer of Dillon County

the excess of three dollars per marriage license sold by the Judge of Probate to await the final disposition of the cause is not a matter of concern to the appellant, and that there is no error on the part of the lower Court in dissolving such order. In so holding, however, we are not to be understood as making any ruling in this case respecting the ownership of the fund in question or the disposition that has been or may be made of the same.

And we are not to be understood as affirming the comment of the lower Court that not only is the appellant as a taxpayer not injuriously affected by the license Act in question, but that "the contrary is quite evidently true, that is to say, a taxpayer is presumably *benefited* in the reduction of taxes by the requirement of the Act that four dollars shall be collected by the Judge of Probate for each marriage license and turned over to the Treasurer of the County." It is introducing a new doctrine into the law to speak of taxpayers being benefited by illegal exactions rather than injuriously affected by them. The injury is the resulting confusion in the law, the resulting costs of litigation, and the loss to the County of revenue which otherwise would be incident to the business of issuing marriage licenses in Dillon County at the proper statutory rate of one dollar for each license.

We find no support in the record for the statement in the demurrer and the order of the lower Court that the appellant brought this action for the benefit of anyone other than himself.

For the reason stated, the order of the lower Court dismissing the complaint, and dissolving the restraining order which had been issued relating to the segregated fund, is affirmed.

TAYLOR, J., concurs.

FISHBURNE, STUKES and OXNER, JJ., concur in result.

OXNER, Justice (concurring).

I concur in the result of the opinion of the CHIEF JUSTICE.

I find no unusual circumstances here which would enable Appellant, as a taxpayer, to maintain an action for a declaratory judgment with respect to the constitutionality of the 1948 Act fixing the marriage license fee in Dillon County because there is no showing that he would be injuriously affected by the unconstitutionality of said Act. Neither does he have any status to ask for an adjudication as to the rights, if any, of other parties in the funds previously segregated under order of the Court. In *Dillon County v. Maryland Casualty Co.*, 217 S. C. 66, 59 S. E. (2d) 640, 644, we quoted the following with approval: "No one can obtain a decision as to the invalidity of a law on the ground that it impairs the rights of others, for one attacking the constitutionality of a statute is not the champion of any rights except his own."

I do not think it proper at this time to anticipate what facts will develop on the trial of the case of the County of Dillon against Allen and his surety, the Maryland Casualty Company. So far we have only the pleadings before us. We should refrain on this appeal from discussing the issues in that case. Nor do I think the previous decisions of this Court presuppose, as stated in the leading opinion, "the collection of fees by the Judge of Probate for the issuance by him of Dillon County marriage licenses."

With respect to the segregated funds, it is sufficient to say that they should now be placed in the general account of Dillon County. If that county has incurred any liability for collecting marriage fees in excess of that allowed by law, the remedy is in a suit against the county.

FISHBURNE and STUKES, JJ., concur.